IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **ELIZABETH DANIELL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**LIMA ONE CAPITAL, LLC,** a Georgia company,<br><br>*Defendant.* | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Elizabeth Daniell ("Plaintiff Daniell" or "Daniell") brings this Class Action Complaint and Demand for Jury Trial against Lima One Capital, LLC, ("Defendant" or "Lima One Capital") to stop the Defendant from violating the TCPA and Florida Telephone Solicitation Act ("FTSA") by placing calls to consumers without consent including pre-recorded voice message calls and calls to phone numbers that are registered on the National Do Not Call registry ("DNC"), and unsolicited calls that are placed to consumers using an autodialer in violation of the FTSA. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Daniell, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to

all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Daniell is a resident of Jacksonville, Florida.

2. Defendant Lima One Capital is a company registered in Georgia, with its headquarters located in Greenville, South Carolina. Defendant conducts business throughout the US including in Florida.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") as well as supplemental jurisdiction over Plaintiff's state law claims under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

4. This Court has personal jurisdiction and venue is proper since the Defendant does business in this District and the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints

about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in September 2026 alone, at a rate of 128.0 million per day. www.robocallindex.com (last visited November 1, 2026).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant Lima One Capital provides lending solutions to real estate investors.[3]

14. Lima One Capital markets its lending products to individuals seeking financing for real estate investments. Its solicitation efforts are not limited to business entities but rather to regular individuals who may want to explore financing for a real estate investment.

15. Defendant Lima One Capital places calls to consumers to generate business.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/lima-one-capital-llc/about/

16. Defendant Lima One Capital uses Gong, an AI operating system that automatically records, transcribes, and analyzes interactions such as phone calls to help sales teams close more deals.[4]

17. Lima One Capital is featured on the Gong website as a recognized user of the system:



[5]

18. William Goff, a regional loan officer at Lima One Capital posted on Linkedin about how he used Gong, which included approximately 1,000 weekly dials and cold calling:

---

[4] https://www.gong.io/platform

[5] https://www.gong.io/golden-gong-awards



**William Goff**
Regional Loan Officer at Lima One Capital

**Experience**

**Lima One Capital**
Full-time · 1 yr 6 mos
Charlotte, North Carolina, United States · On-site

**Regional Loan Officer, Business Development**
Mar 2026 - Present · 9 mos

As a Regional Loan Officer at Lima One Capital, I work with real estate investors to structure financing solutions across fix-and-flip, new construction, and DSCR lending. I evaluate investment strategies, analyze key deal metrics including LTV, LTC, LTARV, and DSCR, and develop financing structures tailored borrowers.

**Real Estate Financing, Loan Origination and +2 skills**

**Sales Development Representative**
Jun 2025 - Mar 2026 · 10 mos

Qualified prospective real estate investors on their investment experience, financing objectives, and deal feasibility. I managed a high-volume outbound workflow (~1,000 weekly dials), tracking activity and outcomes in Salesforce, Gong, and Nooks to ensure every meeting booked met internal quality standards.

Within nine months, I was promoted to Regional Loan Officer, taking on direct ownership of originating and closing loans.

**Cold Calling and Sales Prospecting**

[6]

19. Using Gong Engage, all team members are given the capability to record voicemail messages that they can leave if a prospect does not answer a call:

[6] https://www.linkedin.com/in/williamgoff1/



**Who can use this**: Any team member

**Available on**: Gong Engage

**Ideal for**: Sales rep, Sales manager

Record voicemail messages in advance, then drop one with the Gong Dialer when a prospect you're calling from Engage doesn't pick up. Instead of leaving the same message live on every outreach call, you play a saved one with a single click. Keep your most-used messages at the top of your list.

## Record a voicemail message

Each recording is saved to your personal list, so you can select it when you leave a voicemail during a call.

[7]

20. Lima One Capital sales development employees place cold calls to generate business, as per the example provided above.

21. Defendant advertised a job posting 3 months ago for a Revenue Operations Analyst. In that job post description Lima One Capital identifies its technology stack including tools such as Salesforce, Gong, Nooks, and Hubspot. and as part of the job responsibilities it listed "Analyze and optimize existing sequences and manage dialer configurations in the telephony and sales cadence systems."[8]

22. Nooks is an automated sales dialing platform that allows sales representative to place calls using power dialing, parallel dialing, adaptive dialing,

---

[7] https://help.gong.io/docs/record-and-drop-voicemail-messages
[8] https://www.linkedin.com/jobs/view/revenue-operations-analyst-at-lima-one-capital-4432440874/

and turbo dialing technology. Nooks can dial multiple people at the same time and automatically adjust the number of calling lines.[9] Nooks advertises itself as an "AI sales assistant platform that gives reps superhuman selling powers. Nooks AI-powered dialer helps reps automate the busy work of calling."[10] [11]

23. Lima One Capital uses Gong, a sales platform that helps companies manage and track their sales calls. Gong integrates with Nooks, allowing representatives to transfer calling tasks from Gong into Nooks for automated dialing. Nooks then records the results of the calls back into Gong.[12]

24. In addition to the above, Billy Haller, a Lima One Capital employee also posted about how he engaged in cold calling to generate business:

[9] https://support.nooks.ai/articles/3845888418-adaptive-and-turbo-dialing
[10] https://www.nooks.ai/blog-posts/gong-engage-gets-its-first-ai-dialer-integration-meet-nooks
[11] https://collective.gong.io/integrations/nooks
[12] https://www.nooks.ai/blog-posts/gong-engage-gets-its-first-ai-dialer-integration-meet-nooks

**Billy Haller**
Loan Officer @ Lima One Capital

**Experience**

**Lima One Capital**
1 yr 8 mos

**Loan Officer**
Feb 2026 - Present · 10 mos

**Networking, Phone Etiquette and +2 skills**

**Sales Development Representative**
Apr 2025 - Present · 1 yr 8 mos
Greenville, South Carolina, United States · On-site

Fielding and qualifying real estate investors for Lima One's product suite including lending for new construction, fix and flip and rental investments. Using sales technologies to advance Lima One Capital's brand to investors working with other lenders, while learning the basics of the mortgage industry. Cold calling, email campaigns and followups in order to learn the necessary foundation for becoming a loan officer at Lima One.

**Networking, Phone Etiquette and +2 skills** [13]

25. In job postings for a loan officer, Lima One Capital requires that applicants have at least 2 years of sales experience with a focus on outbound calling experience, and list outbound prospecting as part of the job:

**What You'll Do:**

- **Lead Management:** Build your own book of business through both outbound and inbound prospecting and networking.
- **Customer Development:** Responsible for educating prospects and clients about Lima One's products and determining which will best fit their investment strategy, negotiating loan terms, collecting applications, and updating clients.
- **Relationship Building:** Maintain your book of business by nurturing client relationships. Once a lead is assigned to you at Lima, their business remains with you throughout your tenure.
- **Pipeline Collaboration:** Work alongside other loan originators, underwriters, and loan processors within Lima One Capital to ensure a top-notch customer service experience for our clients.

**Requirements**

- **Sales Experience:** Minimum 2 years of experience with inside sales, focus on outbound calling
- **Education:** Bachelor's degree or a minimum of three years of sales experience
- **Technology:** Proficient in Microsoft Office, experience with CRM platforms is a plus
- **Competitive Mindset:** Proved track record of achieving goals and thriving in a fast-paced environment
- **Communication Skills:** Ability to hold resourceful and significant conversations and conduct proactive follow-ups with potential and active borrowers [14]

---

[13] https://www.linkedin.com/in/billy-haller-37396a290/
[14] https://recruiting.paylocity.com/Recruiting/Jobs/Details/2730045/Lima-One-Capital/Loan-Officer

26. As a result of the cold calling and use of Gong to place calls, consumers like the Plaintiff are receiving unsolicited calls, including pre-recorded voice message calls, despite having their phone numbers registered on the DNC, and in spite of the FTSA that prohibits calls placed using an autodialer.

27. In response to these calls, Plaintiff Daniell brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and FTSA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF DANIELL'S ALLEGATIONS**

28. Plaintiff Daniell is the subscriber and sole user of the cell phone number ending with 0322.

29. Plaintiff Daniell registered her cell phone number on the DNC on June 23, 2016.

30. Plaintiff Daniell uses her cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

31. Plaintiff Daniell's cell phone number is not associated with a business and is not used for business-related purposes.

32. Plaintiff Daniell only has her cell phone number that she uses for residential use. She does not have a landline or VOIP phone number.

33. Plaintiff Daniell resides in Florida and she was physically present in Florida at the time she received calls to her cell phone from Lima One Capital.

34. The calls that Plaintiff Daniell received from Lima One Capital were received more than 31 days from the time Plaintiff registered her cell phone number on the DNC.

35. On October 26, 2026, Plaintiff Daniell received an unsolicited call to her cell phone from 773-923-3747.

36. This call was not answered, but a pre-recorded voicemail was left stating:

> "Hey, this is David with Lima One Capital. We help real estate investors with funding for rentals, fix and flip, and new construction. Feel free to call me back at 864-685-7503. Hope to hear you soon."

37. Plaintiff Daniell recognized that the voicemail was pre-recorded because it begins with dead silence, followed by 3 seconds of background noise before the spoken part of the message begins. The message itself is generic, providing an introduction of who Lima One Capital is, and it contains nothing specific about Plaintiff like her name. Lima One Capital's sales representatives use Gong, which enables them to leave a pre-recorded voicemail recording when the called party does not answer.

38. Right after the voicemail was left, Plaintiff Daniell received an email from David Hughes from Lima One Capital referencing the call he had just placed:


12:33

David Hughes
To: Beth Daniell
12:32 PM

Let's connect this week

Hi Elizabeth,

David here with Lima One. I wanted to connect and see if you're still active in the market. I tried to get you over the phone as well, but wasn't able to connect. If you've got any new real estate investments on the horizon, I'd love to catch up and chat through what we've got on offer.

Here's a quick look at our programs:

- Fix & Flip: Up to 95% LTC for rehab projects
- Ground-Up Construction: Up to 90% LTC on ground-up builds
- Bridge: Short-term capital with up to 85% LTV for fast-moving opportunities
- Rental: Single-property and portfolio financing for 1 to 9-unit properties

Call back or shoot me a reply when you've got a second. My calendar is below:

Book A Meeting

David Hughes
Sales Development Representative
Phone: (864) 685-7503
Email: dphughes@limaone.com
https://calendly.com/dphughes-limaonecapital/30min



39. The email from Hughes states that he is a sales development representative for Lima One Capital. William Goff and Billy Haller were also sales development representatives who referenced cold calling in their Linkedin profiles:

**William Goff**
Regional Loan Officer at Lima One Capital

## Experience

**Lima One Capital**
Full-time · 1 yr 6 mos
Charlotte, North Carolina, United States · On-site

**Regional Loan Officer, Business Development**
Mar 2026 - Present · 9 mos

As a Regional Loan Officer at Lima One Capital, I work with real estate investors to structure financing solutions across fix-and-flip, new construction, and DSCR lending. I evaluate investment strategies, analyze key deal metrics including LTV, LTC, LTARV, and DSCR, and develop financing structures tailored borrowers.

**Real Estate Financing, Loan Origination and +2 skills**

**Sales Development Representative**
Jun 2025 - Mar 2026 · 10 mos

Qualified prospective real estate investors on their investment experience, financing objectives, and deal feasibility. I managed a high-volume outbound workflow (~1,000 weekly dials), tracking activity and outcomes in Salesforce, Gong, and Nooks to ensure every meeting booked met internal quality standards.

Within nine months, I was promoted to Regional Loan Officer, taking on direct ownership of originating and closing loans.

**Cold Calling and Sales Prospecting** [15]

**Billy Haller**
Loan Officer @ Lima One Capital

## Experience

**Lima One Capital**
1 yr 8 mos

**Loan Officer**
Feb 2026 - Present · 10 mos

**Networking, Phone Etiquette and +2 skills**

**Sales Development Representative**
Apr 2025 - Present · 1 yr 8 mos
Greenville, South Carolina, United States · On-site

Fielding and qualifying real estate investors for Lima One's product suite including lending for new construction, fix and flip and rental investments. Using sales technologies to advance Lima One Capital's brand to investors working with other lenders, while learning the basics of the mortgage industry. Cold calling, email campaigns and followups in order to learn the necessary foundation for becoming a loan officer at Lima One.

**Networking, Phone Etiquette and +2 skills** [16]

---

[15] https://www.linkedin.com/in/williamgoff1/
[16] https://www.linkedin.com/in/billy-haller-37396a290/

40. The email shows that 864-685-7503 belongs to David Hughes from Lima One Capital.

41. On October 27, 2026 at 9:49 AM, Plaintiff Daniell received an unsolicited text message to her cell phone from 864-685-7503, following up on the previous call and further confirming the purpose of Defendant's calls was to solicit the Plaintiff for real estate investment loans.




42. On October 28, 2026 at 11:28 AM, Plaintiff Daniell received an unsolicited call to her cell phone from 773-923-3747.

43. This call was not answered, but a pre-recorded voicemail was left stating:

"David with Lima One Capital private lending."

44. Plaintiff could recognize that this voicemail was pre-recorded because it begins after 2 seconds of dead silence, and there is 5 seconds of dead silence at the end of the message. This voicemail sounds incomplete, as if there was an error in the transmission of the message.

45. Plaintiff Daniell has never done business with Lima One Capital.

46. Plaintiff Daniell never provided her cell phone number to Lima One Capital.

47. Plaintiff Daniell was not looking to acquire a property or engage in any kind of property transaction.

48. The unsolicited telephone calls that Plaintiff Daniell received from Defendant Lima One Capital have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

49. Seeking redress for these injuries, Plaintiff Daniell, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA and FTSA.

## CLASS ALLEGATIONS

50. Plaintiff Daniell brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification

(1) the Defendant called on their cellular telephone number (2) using a pre-recorded voice.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Lima One Capital called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called the Plaintiff.

**Florida DNC Class**: All persons in Florida who from four years prior to the filing of this action through class certification (1) whose telephone numbers appear on the then-current "no sales solicitation calls" list, and (2) who received unwanted telephonic sales calls from or on behalf of the Defendant.

**Florida Autodial Class**: All persons in Florida who from four years prior to the filing of this action through class certification (1) who received unwanted telephonic sales calls from or on behalf of the Defendant (2) using a prerecorded voice message and/or the same equipment or type of equipment utilized to call the Plaintiff.

51. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Daniell anticipates the need to amend the Class definitions following appropriate discovery.

52. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed unsolicited pre-recorded calls to Plaintiff and members of the Pre-Recorded No Consent Class without first obtaining consent to make the calls;

(c) Whether Defendant placed unsolicited calls to Plaintiff and members of the Do Not Call Registry Class without first obtaining consent to make the calls;

(d) Whether Defendant placed calls to the Plaintiff and members of the Florida Autodial class without first obtaining consent to make the calls;

(e) Whether the calls constitute a violation of the TCPA and FTSA:

(f) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff Daniell will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent

and experienced in class actions. Plaintiff Daniell has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Daniell and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Daniell nor her counsel have any interest adverse to the Classes.

55. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as whole, not on facts or law applicable only to Plaintiff Daniell. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Daniell and the Pre-Recorded No Consent Class)**

56. Plaintiff Daniell repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57. The Defendant transmitted unwanted telephone calls to Plaintiff Daniell and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

58. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

59. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Daniell and the Do Not Call Registry Class)**

60. Plaintiff Daniell repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

61. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

62. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

63. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Daniell and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

64. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Daniell and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200,

as described above.

65. As a result of Defendant's conduct as alleged herein, Plaintiff Daniell and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

66. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**<u>THIRD CLAIM FOR RELIEF</u>**
**Florida Telephone Solicitation Act**
**(Violation of the Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Daniell and the Florida DNC Class)**

67. Plaintiff Daniell repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68. Plaintiff Daniell brings this claim individually and on behalf of the Florida DNC Class Members against the Defendant.

69. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4).

70. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any

consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

71. In violation of the FTSA, Defendant made and/or caused to be made unsolicited telephone sales calls to Plaintiff Daniell and other members of the Florida DNC Class, despite their telephone number appearing on the quarterly listing published by the Department.

72. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Daniell and Class members were harmed and are each entitled to a minimum of $500.00 in damage for each violation. Plaintiff Daniell and the Class members are also entitled to an injunction against future calls. *Id.*

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Florida Telephone Solicitation Act**
**(Violation of the Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Daniell and the Florida Autodial Class)**

73. Plaintiff Daniell repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

74. Plaintiff Daniell brings this claim individually and on behalf of the Florida Autodial Class Members against the Defendant.

75. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and

dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

76. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

77. Defendant failed to secure prior express written consent from Plaintiff Daniell and members of the Florida Autodial Class.

78. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to the Plaintiff and the Florida Autodial Class members without Plaintiff's and the Class members' prior express written consent.

79. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Daniell and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers and a prerecorded voice message.

80. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Elizabeth Daniell and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff

Daniell and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Daniell requests a jury trial.

Respectfully Submitted,

**ELIZABETH DANIELL**, individually and on behalf of all others similarly situated,

DATED this 18th day of November, 2026.

By: /s/ *Stefan Coleman*

Stefan Coleman (Fla. Bar No. 30188)
COLEMAN PLLC
101 NE 3rd Avenue,
Suite 1554
Fort Lauderdale, FL 33301
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman (Fla. Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

**Lead counsel*